■ CONGREGATIONAL REALTY CORP., Appellant, v. CONGREGATION BNAI ISRAEL et al., Respondents, et al., Defendants.— Order, entered on December 20, 1967, denying plaintiff's motion to dismiss the two defenses contained in

defendant's amended answer, affirmed, with $50 costs and disbursements to defendant-respondent. There is enough in these affirmative defenses and in what is contained in the affidavits which are part of this record, to raise the issue as to whether the plaintiff or the defendant should get the benefit of the bank's willingness to accept $95,000 in payment of its claim for $157,270. There is a serious question as to whether, under the circumstances disclosed, the members of the congregation, who took part in the so-called "burn-the-mortgage" campaign, had any thought or intent to profit by their participation. A trial must be held in order to get to the truth. Concur — Botein, P. J., Capozzoli, McGivern and Macken, JJ.; Steuer, J., dissents in the following memorandum: The motion is to dismiss two defenses on the ground that "a defense is not stated or has no merit" (CPLR 3211, subd. [b]). The words "has no merit" were added by the submission of such an amendment by the Judicial Conference in 1965 and became law by failure of the Legislature to disapprove. The words to date have not received judicial interpretation but the occasion for their enactment is clear (see Siegel, Supplementary Practice Commentary, McKinney's Cons. Laws of N. Y., Book 7B, CPLR 3211 [1967 Supp.], pp. 142–143). A question was raised in *Kukoda* v. *Schneider* (41 Misc 2d 308) whether the quoted provision allowed the court to consider extrinsic evidence and determine whether a defense properly alleged was viable as a factual proposition. Special Term's conclusion was that there was such power. The statutory words were intended to confirm that conclusion. The consequence is, where the facts alleged in an affirmative defense are challenged by affidavit, it becomes incumbent on the defendant to come forward with sufficient evidentiary matter to raise an issue and, failing that, the defense should be dismissed. The factual situation disclosed by the moving affidavits is as follows. The defendant is a religious corporation which is the owner of the realty located at 602–610 West 149th Street and used as its synagogue. In 1942 the property was encumbered by two mortgages which at that time were consolidated into a single first mortgage in the principal sum of $162,000. The mortgagee was the Manhattan Savings Bank (herein the bank). On July 2, 1946, although defendant had reduced the principal sum of the mortgage to $157,270, it was in default. An agreement was thereupon entered into between defendant and the bank extending the due date and providing that the principal sum should be paid $5,000 forthwith, $5,000 on November 30, 1946, $1,500 quarterly thereafter until October 1, 1947, and the balance on December 31, 1947. It was further provided that defendant would have the privilege of purchasing the entire bond and mortgage on December 31 1946, for $90,000, less any sums already paid, or after December 31, 1946, but before January 1, 1948, for $95,000. In June, 1947 the plaintiff corporation was organized to assist defendant in raising the money to take advantage of the offer. The method was to sell the stock for $100 a share, the principal to be used to obtain from the bank an assignment of the mortgage. All of this was done with the approbation of defendant. On June 24, 1947, the financial situation was that defendant had paid the bank the initial payment of $5,000, and installment payments of $8,000, amounting to, in all, $13,000. Plaintiff had raised $42,000 in stock subscriptions. On that day the parties made further agreements. The bank credited the $13,000 it had received, reducing the mortgage to $144,270. The bank received the $42,000 from the plaintiff, which, with the $13,000 already received from defendant, amounted to $55,000, which would leave unpaid $40,000 under the agreement of July 2, 1946. The bank, with the knowledge and consent of defendant, thereupon transferred to plaintiff a junior interest in the mortgage amounting to $104,270, and retained for itself a senior interest

in the sum of $40,000. To paraphrase the transaction entered into that day, the bank acknowledged the amortization payments it had received from defendant which reduced the mortgage principal to $144,270. It carried out the spirit of its agreement by transferring to plaintiff all of its interest in the mortgage except the $40,000, which was unpaid on its agreement to accept $95,000 in lieu of the face amount of the mortgage. Subsequently the $40,000 owed to the bank was paid by defendant in several installments. This action was brought to foreclose the mortgage on the ground that the premises were not being properly maintained in accord with the terms of the mortgage. However, in the course of the litigation that issue was resolved to the satisfaction of the parties, and this litigation is now resolved to an issue as to what is due as principal on the mortgage. The plaintiff maintains that the sum is $104,270, the amount of the junior interest assigned to it, and on which, concededly, nothing has been paid. The first affirmative defense pleads that plaintiff's sole interest in the mortgage is $42,000, the sum paid by plaintiff to the bank, which sum defendant offers to pay. The second defense pleads the same facts and seeks reformation. It appears clearly that the defenses contradict the operative documents in the case. The interest assigned to the plaintiff was everything above the bank's senior interest of $40,000. The allegation that the mortgage was reduced by the plaintiff's payment to the bank is patently false. It is argued that the subscribers to plaintiff's stock expected no more than a return of their original subscription and really considered the subscriptions a donation. The affidavits buttress this claim by alleging that many of the original subscribers sold their stock to one Selengut at reduced prices. This is of no moment. The assignment is not challenged, nor is the fact that it was made with the full knowledge of defendant, nor that defendant well knew that when plaintiff was organized the subscribers were to be secured by an assignment of the mortgage to them. The real issue in the case is who is to get the benefit of the bank's agreement to accept $95,000 in payment of its claim for $157,270. According to the documents, that party is the plaintiff. No evidence of any contrary agreement is tendered. No affidavit of any participant in the negotiations with the bank or in the organization of the plaintiff contains any proof of a contrary intent. It is undoubted that without the payment made by plaintiff defendant could not have had the advantage of the bank's offer and it is very likely the fact that defendant anticipated that with the mortgage in friendly hands it would eventually obtain that advantage. But defendant made no provision for the realization of its expectations at the time and has advanced no fact in the defenses which would defeat plaintiff's claim.